[Civ. No. 1777. Fourth Appellate District.—March 17, 1936.]

JOSEPH KING, Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY et al., Respondents.

Fred Kunzel, Adam Thompson, Renwick Thompson and Stearns, Luce, Forward & Swing for Petitioner.

Noon & Noon and Glen H. Munkelt for Respondents.

MARKS, J.—Joseph King was one of the plaintiffs in an action brought in the Superior Court of San Diego County to recover damages from Franklin P. Chapman for the deaths of Rose King and Mariano King. The plaintiffs were heirs at law of the two deceased persons. The case was tried before the court without a jury. The trial was concluded and the case submitted on November 18, 1935. At that time the trial judge announced his decision for defendant and directed his counsel to prepare findings of fact and conclusions of law. Before these were served or filed, plaintiffs' counsel filed a notice of motion to reopen the case for the purpose of receiving further evidence, and hearing further argument. Attached to the notice of motion were affidavits of one of plaintiffs' counsel and of William D. Stenhouse. The latter set forth the evidence Stenhouse was expected to give. The motion was noticed for December 9, 1935, and was continued for hearing to December 13th. Defendant filed objections to the granting of the motion. The minutes of the trial court show the following disposition of the motion on December 13, 1935: "This being the time set for hearing plaintiffs' motion for leave to reopen the above entitled case for the purpose of receiving further evidence and to hear further argument. Said motion is presented to the Court, argued by respective counsel, submitted for decision, and by the Court it is ordered that said motion be granted. Notice waived. Case set for further hearing on Tuesday, December 17th, 1935, at 10 o'clock A. M. thereof."

The reporter's transcript shows that after argument and submission of the matter the following colloquy occurred between the court and counsel: "The Court: The motion is granted, nevertheless. I will reopen the case. Mr. Munkelt: That of course will give the defendant an opportunity to present evidence in the way of impeachment. The Court: If the new evidence brought on by the plaintiffs seems by the defense to require an answer, the defense will have plenty of opportunity to answer. . . . Mr. Kunzel: In view of what has been said in regard to impeaching testimony, we of course would not be precluded from putting on corroborative testimony. We may have some corroborative testimony by other witnesses corroborating Stenhouse's testimony. The Court: After I have opened it up, I will hear all the evidence anybody has that bears on the case."

The trial court was otherwise engaged on December 17, 1935, and the case was heard on December 24, 1935. William D. Stenhouse was produced as a witness for plaintiffs and testified in accordance with the summary of his evidence set forth in his affidavit. At the conclusion of his direct examination counsel for plaintiffs filed a dismissal of the action without prejudice which was dated December 24, 1935.

On December 30, 1935, counsel for Chapman filed a notice of motion: "1. To rule upon the objection of the defendant, now pending, to the dismissal, by the plaintiffs, of this action, without prejudice. 2. To vacate and set aside the order made and entered by this Court on December 13, 1935, wherein the Court granted the plaintiffs' motion, dated December 2, 1935, to take the testimony of William D. Stenhouse. 3. To strike from the record all of the testimony of William D. Stenhouse as taken on December 24, 1935. 4. To strike from the record and files the purported dismissal of this action without prejudice, filed by plaintiffs' attorneys on December 24, 1935, and to vacate and set aside said purported dismissal. 5. That judgment in this action be entered in favor of the defendant on the merits." The notice specified, as grounds for the motion, fraud on the part of counsel for plaintiffs in all the proceedings which followed the submission of the case on November 18th, including the dismissal of the action on December 24th. The motion was granted in all particulars and counsel for Chapman instructed to prepare findings of fact and conclusions of law preparatory to the entry of judgment in his favor. We

will hereafter refer to this motion and order as the motion or order vacating the order reopening the case. A petition was filed here and the proceedings were ordered before this court by writ of review and the respondent judge was prohibited from signing any findings of fact and conclusions of law, or judgment, in the case of *King* v. *Chapman* until further order of this court.

It is not questioned that a court has inherent power to set aside and vacate any order or judgment produced by extrinsic fraud. (*Rowland* v. *Kreyenhagen*, 24 Cal. 52; *Trumpler* v. *Trumpler*, 123 Cal. 248 [55 Pac. 1008]; *McGuinness* v. *Superior Court*, 196 Cal. 222 [237 Pac. 42, 40 A. L. R. 1110]; *Aldrich* v. *Aldrich*, 203 Cal. 433 [264 Pac. 754]; *Williams* v. *Reed*, 43 Cal. App. 425 [185 Pac. 515]; *McKeever* v. *Superior Court*, 85 Cal. App. 381 [259 Pac. 373]; *Kronman* v. *Kronman*, 129 Cal. App. 10 [18 Pac. (2d) 712].)

Three questions are presented for our consideration: (1) Was there any evidence before the trial court to sustain the implied finding of fraud on the part of counsel for plaintiffs? (2) If there was no evidence of fraud, was the trial court without jurisdiction to grant the motion of counsel for Chapman? (3) Will a writ of review and prohibition lie where the order sought to be annulled can be reviewed on appeal from a judgment entered in accordance with such order?

Section 581 of the Code of Civil Procedure provides that a case may be dismissed by the plaintiff at any time before the trial, upon written request to the clerk, filed with the papers in the case. The expression "before the trial" has been construed to mean before submission of the case. "A case is submitted after the court, trying the case without a jury, has taken the case under advisement, at the close of the evidence and argument." (*MacDermont* v. *Grant*, 181 Cal. 332 [184 Pac. 396].) See, also, *Strupelle* v. *Strupelle*, 59 Cal. App. 526 [211 Pac. 248]; *Provencher* v. *Los Angeles City School District*, 10 Cal. App. (2d) 730 [52 Pac. (2d) 983].

It must be admitted that the order of December 13, 1935, was general in its terms and was not limited to the reception of the testimony of a particular witness. That it was so understood by all parties concerned is clear from the remarks made at the time, which we have already quoted. This being true, the order of submission having been vacated generally

and not specifically, it having been understood that any new evidence available to either party might be offered, and that the case might be reargued should counsel so desire, it is clear that the dismissal was filed "before the trial" as required by section 581 of the Code of Civil Procedure. As no other order of submission was made prior to the filing of the written order of dismissal with the clerk, that document was filed before the trial, and the filing was a matter of right under the provisions of section 581 of the Code of Civil Procedure and the cases already cited. The following cases support this conclusion: *Westbray* v. *Gray*, 116 Cal. 660 [48 Pac. 800]; *Jones* v. *Currier*, 65 Iowa, 533 [22 N. W. 663]; *National Bank of Commerce* v. *Butler*, 163 Mo. App. 380 [143 S. W. 1117]; *Knight* v. *Illinois Central R. R.*, 180 Fed. 368; *Van Sant* v. *Wentworth*, 60 Ind. App. 591 [108 N. E. 975].

A dismissal of an action has the effect of terminating it, and the rights of the parties as affected by that particular action are concluded as though the case had been determined on its merits, though it is not a bar to a new action. (Sec. 581, Code Civ. Proc.; 9 Cal. Jur. 524, and cases cited.)

In the case of *Fisch & Co., Ltd.*, v. *Superior Court*, 6 Cal. App. (2d) 21 [43 Pac. (2d) 855], the court, in discussing a judgment of dismissal under a subdivision of the code section other than the one involved here, said: "While such a judgment is reviewable on appeal and also when inadvertently made may be set aside under section 473 of the Code of Civil Procedure, it is not subject to change by the trial court in the manner indicated by the record as presented to us. A judgment can be nullified by the court which rendered it only (1) on motion for a new trial, (2) by a motion under the provisions of section 473 of the Code of Civil Procedure, where application is made to set it aside within six months, (3) by motion therefor at any time where the judgment is void on its face, or (4) by an independent suit in equity, where the judgment is regular on its face but extrinsically void for want of jurisdiction or by reason of fraud or mistake. (*Benning* v. *Superior Court*, 34 Cal. App. 296 [167 Pac. 291]; *Estate of Soboslay*, 80 Cal. App. Dec. 19 [39 Pac. (2d) 871]; *Robinson* v. *Southland Produce Co.*, 112 Cal. App. 106 [296 Pac. 303].)" (See *Estate of Soboslay*, 4 Cal. (2d) 177 [47 Pac. (2d) 714].)

■ It does not appear from the record before us that the clerk performed his ministerial duty and entered the dismissal in his register as required by section 581 of the Code of Civil Procedure, which entry has the effect of a final judgment. (*Southern Pac. R. R. Co.* v. *Willett*, 216 Cal. 387 [14 Pac. (2d) 526].)

■ No evidence was offered by Chapman in support of his motion to vacate the order reopening the case. The respondents must rely upon the conduct of counsel for plaintiffs and the evidence offered by them on the hearing of the motion to vacate the order of submission to support the inference of fraud drawn by the trial judge at the time the order under attack here was made.

This evidence consisted of the testimony of two of the attorneys for plaintiffs and the associate of one of them. This evidence may be summarized as follows: That the evidence of Stenhouse was discovered after the case was submitted to the trial judge on November 18, 1935, and before the notice of motion to vacate the order of submission was given; that it occurred to one attorney that if the order of submission was vacated generally the action might be dismissed; that after the order of submission was vacated on December 13, 1935, counsel received information that there might be another witness whose testimony might be of great value to plaintiffs; that the details of this testimony could not be obtained and the witness could not be secured for the hearing on December 24, 1935; that after that date and before the hearing of Chapman's motion to vacate the dismissal this witness was found and it was discovered that his evidence would be very valuable to plaintiffs in another trial of the case; that between December 13 and December 24, 1935, counsel for plaintiffs held several conferences with their associates, two of whom were formerly judges of the superior court, on the question of their duty to the plaintiffs in view of the probability that this new evidence might be available at a future date; that it was determined at these conferences that as several of the parties plaintiff were minors, and the evidence of the new witnesses, if it could be developed, might lead to a judgment in their favor, it became the duty of their counsel to dismiss the action as the evidence could not be obtained for the hearing on December 24, 1935; that to show their good faith in making the motion to vacate the order of submission the wit-

ness Stenhouse was to be produced and examined by them; that prior to the time it seemed probable that new evidence for plaintiffs might be developed, which time was after the motion to vacate the submission was granted on December 13, 1935, they had no intent to dismiss the case; that the idea of dismissing the case was not entertained by any of them prior to December 13, 1935.

██ Respondents lay stress on two bits of testimony which they urge support the inference of fraud on the part of counsel for plaintiffs: (1) the admission of one of them that it occurred to him that the plaintiffs had a right to dismiss the case should a general order reopening the case be made; and (2) that in the testimony of one of the associates of counsel for plaintiffs the witness stated that the first conference on the matter of the dismissal of the action was held on December 10 or 12, 1935.

We can attach little importance to the admission of counsel that it occurred to him, prior to December 13th, that the case could be dismissed should a general order reopening it be made. He is an attorney at law and as such is learned in the law, both theoretically and actually. Certainly an attorney is presumed to know the law, and because he recalls the rather elemental rule of the law that a case may be dismissed at any time before the trial and that "before the trial" means at any time before it is submitted for decision, should not in itself be held to be evidence of fraud.

██ It is true that one of the attorneys testifying for the plaintiffs stated that the first conversation concerning the dismissal was held on December 10th or 12th. This attorney was not in active charge of the case. At his own request he resumed the stand to correct his testimony, and then stated positively that the conversation occurred after the case was reopened, and that he had been mistaken in giving the dates, and that, if the case was reopened on December 13th, the conversation occurred after that date and before December 17th, the day first set for taking evidence. This corresponded with all the other evidence produced. We have studied the record and are left with the conviction that the conversation in question occurred after the case was reopened. This attorney was not actively connected with the case and was not sure of the dates of the different proceedings. When he mistakenly fixed dates because he was under the mistaken impression that the

date of an order was prior to the time it was actually made, and then voluntarily corrected this mistake, and swore positively that the conversation occurred subsequent to the making of the order, we are of the conclusion that there was no substantial conflict in his evidence. A record should be construed fairly in order that the truth may be ascertained and we feel that in fairness to all parties concerned no other interpretation could be placed upon the record.

█ Counsel for respondents urge that the motion to reopen the case should not have been granted, because there was no sufficient showing of diligence in searching for the evidence of Stenhouse before the trial, and, because his evidence, as they maintain, conflicted with the theory of plaintiffs on the trial. They attempt to draw the inference of fraud from these facts. This argument was available to counsel in resisting the motion to reopen the case but cannot avail them here. The motion was granted after a full hearing. If no sufficient showing was made in support of the motion the order granting it was an error of the trial court. To predicate fraud of counsel on the showing made in support of the order would necessitate the inference of either weakness or complicity on the part of the trial judge. We are sure counsel would disclaim any such inference and there is nothing in the record to justify a suspicion of it.

There remains only the cold record of the sequence of events from which to draw the inference of fraud. These may be summarized again as follows: November 18th, case submitted; December 2d, affidavits of Stenhouse and one counsel verified and notice of motion to reopen dated and filed; motion first noticed for December 9th; December 9th, same continued to December 13th; December 13th, hearing of motion and order reopening case generally and case reset for hearing of evidence December 17th; between December 13th and 17th discovery of the probability of there being another important witness for plaintiffs and conversations of counsel for plaintiffs concerning dismissal; December 17th, cause continued to December 24th; December 24th, direct evidence of Stenhouse taken and case dismissed without prejudice by written order of attorneys for plaintiffs.

We can find nothing in the sequence of the foregoing events upon which to predicate fraud. Following the order of December 13th, reopening the case generally, its dismissal by

plaintiffs was a matter of right. The exercise of a legal right in a legal manner is in itself, and in the absence of other proven facts, insufficient to support an inference of fraud under the circumstances here disclosed.

In approaching the question of the power of this court to inquire into the regularity of the order of the Superior Court in question here, we are first confronted with the general rule that writs of prohibition and review are only available to a petitioner when the lower court has acted without jurisdiction or has exceeded its jurisdiction. We are of the firm opinion that a court should have inherent power to correct, in any orderly and expeditious manner, a judgment or order obtained by extrinsic fraud. This power is not drawn from any statute but is included in the right of every judicial tribunal to protect the sanctity of its judgments.

In the instant case it does not appear that the order of dismissal had been entered in the clerk's register. The duty to so enter it was ministerial and the failure to perform this duty should not be held to change the rights of the parties. We should regard that done which should have been done and measure the rights of the parties as though the required entry which amounted to a final judgment in the case had been made.

The usual and ordinary ways in which a judgment may be set aside by a court rendering it are: (1) by motion for new trial; (2) by motion made in due time under section 473 of the Code of Civil Procedure; (3) by motion at any time when the judgment is void on its face; (4) by suit in equity where the judgment is regular in form but void for extrinsic fraud or other proper causes.

In the instant case the defendant did not choose to follow the usual and ordinary procedure but invoked the inherent power of the court to protect the sanctity of its judgment against extrinsic fraud by means of a motion. It is established that a court has such power. (*McGuinness* v. *Superior Court, supra.*)

We believe the right to invoke this special remedy should depend on the existence of extrinsic fraud properly alleged and proven. This right should be analogous to the power of the court to punish for contempt in which the court exercises a recognized jurisdiction but which cannot be called into action except upon proper charge and upon sufficient evi-

dence of an actual contempt, and must be supported by a proper finding. This forms a limitation upon or defines the extent of the rule that where a court has jurisdiction to decide, it has jurisdiction to decide wrongly, and is based upon the rule that where contempt is neither charged nor found and is not proved, the court exceeds its jurisdiction in inflicting punishment. The rule in such cases may thus be stated: When jurisdiction to inquire and act depends upon the existence of certain facts, the absence of proof of such facts limits the power to that of inquiry only, and if action is attempted it is in excess of jurisdiction. The same reasoning is applied to cases before the Industrial Accident Commission. It is thus stated in *In re Lake,* 65 Cal. App. 420 [224 Pac. 126] : ''While neither writ is one of error, both extended to the entire record of the court below and to the evidence itself when necessary to determine jurisdiction. (*Hotaling* v. *Superior Court,* 191 Cal. 501 [29 A. L. R. 127, 217 Pac. 73, 75].) This inquiry, of course, cannot go beyond the question of jurisdiction and the review of the evidence is limited to the sole purpose of determining, first, whether jurisdiction existed; and, second, whether jurisdiction was exceeded. Thus, where the question is whether jurisdictional facts were or were not proved, the review extends not only to the entire record but to the evidence itself. (*Stumpf* v. *Board of Supervisors,* 131 Cal. 364, 367 [82 Am. St. Rep. 350, 63 Pac. 663] ; *McClatchy* v. *Superior Court,* 119 Cal. 413, 419 [51 Pac. 696, 39 L. R. A. 691] ; *Estate of Paulsen,* 179 Cal. 528, 529, 530 [178 Pac. 143] ; *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, 185 [149 Pac. 35] ; *Van Hoosear* v. *Railroad Com.,* 189 Cal. 228 [207 Pac. 903, 907] ; *Hotaling* v. *Superior Court,* 191 Cal. 501 [217 Pac. 73, 75, 29 A. L. R. 127].) In *Van Hoosear* v. *Railroad Com., supra,* the Supreme Court said, on this point (189 Cal. 228, 236 [207 Pac. 903, 906]) : 'That under a writ of review, the evidence of facts upon which the lower court or tribunal depended for its jurisdiction may be considered, and its judgment set aside if jurisdiction is without support in the evidence, is beyond dispute'. In the same case the court quoted with approval the following passage from *McClatchy* v. *Superior Court, supra:* 'While the writ of *certiorari* is not a writ of error, ''it is nevertheless'', as suggested in *Schwartz* v. *Superior Court,* 111 Cal. 106, 112 [43 Pac. 580], ''a means by which the power of the court in the prem-

ises can be inquired into; and for this purpose the review extends not only to the whole of the record of the court below, but even to the evidence itself, when necessary to determine the jurisdictional fact.'' If, then, by looking at the evidence we can see that the court exceeded its power, we have a right to examine the evidence for that purpose.'

''The next question which presents itself for consideration is: Does the inquiry whether a contempt has in fact been committed go to the jurisdiction of the lower tribunal. Upon the weight of authority this question must be answered in the affirmative. (*Van Hoosear* v. *Railroad Com., supra; Hotaling* v. *Superior Court, supra; Commercial Bank, etc.,* v. *Superior Court, supra.*) In these cases the judgment of contempt was annulled by the Supreme Court and in the Hotaling case it was said (p. 108): 'But we think that if all the facts alleged in the affidavits constituting the complaint had been proved by competent and conclusive evidence, this order should still be annulled *because those facts do not amount to a contempt of court.*' (Italics ours.) . . . Following this statement of principles the court then announces the rule in such clear and succinct language that we can do no better than quote it in full: 'While the writ of *certiorari* is not a writ of error, it nevertheless extends to the whole of the record of the court below and even to the evidence itself where necessary to determine jurisdiction. (*Schwartz* v. *Superior Court, supra; McClatchy* v. *Superior Court, supra; Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180 [149 Pac. 35].) . . . *If the record* of the proceedings, reviewed in the light of the foregoing rules, *fails to show affirmatively upon its face* the existence of all the necessary facts upon which jurisdiction depended, the order must be annulled. (*Frowley* v. *Superior Court* (158 Cal. 220 [110 Pac. 817]), *In re McCarty,* (154 Cal. 534 [98 Pac. 540], and other cases above cited.)' (Emphasis ours.)''

In the case of *McGuinness* v. *Superior Court, supra,* the Supreme Court went into the question of extrinsic fraud alleged in the petition and admitted by a demurrer to it. The facts thus admitted furnished an important and controlling reason for the conclusion reached. We conceive the correct rule to be applied to cases of this kind is, that a court has inherent power and jurisdiction to vacate, on motion, an order or judgment obtained by extrinsic fraud, but if such fraud is

not proved it must be held to have exceeded its jurisdiction in vacating an order or judgment. Upon a proper application being filed it had the power to inquire into the existence of extrinsic fraud but upon the entire failure of any proof of such fraud any action taken which could only be supported by its existence was in excess of its jurisdiction and subject to annulment in a proceeding of this kind.

A judgment of dismissal is reviewable on appeal and except on a proper showing and in a recognized manner it cannot be vacated in the trial court. An attempt to do so is beyond the power of the trial court. (*Holtum* v. *Grief,* 144 Cal. 521 [78 Pac. 11]; *Robinson* v. *Southland Produce Co.,* 112 Cal. App. 106 [296 Pac. 303]; *Kaufman* v. *Superior Court,* 115 Cal. 152 [46 Pac. 904]; *Hopkins* v. *Superior Court,* 136 Cal. 552 [69 Pac. 299].)

Counsel for respondents urge that writs of prohibition and review cannot be invoked here because the order sought to be annulled may be reviewed on appeal from the final judgment in favor of Chapman which the trial court ordered entered. It is true that these writs will not generally lie where there is a plain, speedy and adequate remedy at law. However, what is such a remedy has received frequent and careful attention from the courts. In the case of *Davis* v. *Superior Court,* 184 Cal. 691 [195 Pac. 390], an action had been dismissed under the provisions of section 581 of the Code of Civil Procedure. The trial court sought to vacate the judgment of dismissal and Davis applied for a writ of prohibition to prohibit further action in the case. In opposing the granting of the writ it was urged that appeal was available and that, therefore, prohibition was not the appropriate remedy. In granting the peremptory writ the Supreme Court said: "With regard to the remedy by appeal, the facts are that the order vacating the judgment of dismissal was made on January 2, 1920; that it was a special order made after final judgment and was appealable, and that the right of appeal expired on March 2, 1920. (Code Civ. Proc., sec. 963, subd. 2.) On that day the present proceeding in prohibition was begun in the District Court by the filing of the petition upon which that court issued an order to show cause. While the existence of the right of appeal at that time might have been a sufficient reason for that court to have then refused to entertain the petition (*Gloughie*

v. *Superior Court,* 169 Cal. 675 [147 Pac. 972]), yet, in view of the fact that the superior court was then, and ever since has been, without power or jurisdiction to proceed further in the action, as we have shown, but nevertheless proposes to do so, and that further proceedings of any kind, except to again dismiss the action, would be void, we are disposed to grant the writ, rather than put the parties to further vexation and.useless expense by further attempts to prosecute it. The question is largely one of discretion, and we deem it the better policy to terminate the proceedings forthwith."

To the same effect is *Fletcher* v. *Superior Court,* 79 Cal. App. 468 [250 Pac. 195], where it is said: "In view of what we have heretofore stated there remains but one question for determination: Should the court exercise its discretion herein and issue a writ of prohibition as prayed for? . . . Section 1103 of the Code of Civil Procedure, relating to the issuing of the writ of prohibition, reads: 'It may be issued by any court . . . to an inferior tribunal . . . in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law.' A long list of cases might be cited where it is held prohibition will not issue and a correspondingly long list of cases might be cited where the writ has been issued. The rule may be stated in general language as follows: If the party aggrieved by the act in excess of jurisdiction has a plain, speedy, and adequate remedy at law prohibition will not lie, but if an appeal lies and yet does not afford the parties such a remedy, the court in the exercise of its discretion may grant the writ. In the following cases, notwithstanding the fact that an appeal would lie, the writ has been issued on the ground that an appeal afforded neither a speedy nor adequate remedy: *Dungan* v. *Superior Court,* 149 Cal. 98 [117 Am. St. Rep. 119, 84 Pac. 767]; *Glide* v. *Superior Court,* 147 Cal. 21 [81 Pac. 225]; *Ophir Min. Co.* v. *Superior Court,* 147 Cal. 467 [82 Pac. 70, 3 Ann. Cas. 340]; *Reclamation Dist.* v. *Superior Court,* 171 Cal. 672 [154 Pac. 845]; *Consolidated etc. Co.* v. *Superior Court,* 189 Cal. 92 [207 Pac. 552]; *Craycroft* v. *Superior Court,* 18 Cal. App. 781 [124 Pac. 1042]. In the Glide case a writ of prohibition was granted to prevent a superior court from proceeding to a trial in a case where the issue was whether certain lands were reclaimed, on the ground that the jurisdiction to determine this matter was vested exclusively in the supervisors.

While an appeal would lie in that cause, the Supreme Court, however, held that the aggrieved party should not be put to the delay and expense of an appeal. In the concurring opinion in the case, it is said: 'The question whether or not the remedy by appeal is adequate is, even in cases where jurisdiction is plainly lacking, a matter resting in the sound discretion of the court upon the particular circumstances of each case.' In the case of *Reclamation Dist., etc.,* v. *Superior Court,* 171 Cal. 672 [154 Pac. 845], the writ was granted to prevent the superior court from entertaining an application for an injunction to enjoin the trustees of a reclamation district from exercising certain functions in building levees. In one of the cases cited the writ was issued to prevent a superior court from trying a case to recover a sum of money less than three hundred dollars, notwithstanding an appeal lay to the District Court of Appeal. In the Craycroft case the question involved was the determination of the rights to certain school lands. The writ was issued notwithstanding the remedy by appeal might have been availed of by the aggrieved party.'' See, also, *Hall* v. *Superior Court,* 198 Cal. 373 [245 Pac. 814]; *Commercial Bank* v. *Superior Court,* 192 Cal. 395 [220 Pac. 422].

In the case of *Quevedo* v. *Superior Court,* 131 Cal. App. 698 [21 Pac. (2d) 998], the same rule was applied in the case of a writ of review when part of an order granting a new trial in a case tried before a jury was annulled. See, also, *Delmuto* v. *Superior Court,* 119 Cal. App. 590 [6 Pac. (2d) 1007]; *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180 [149 Pac. 35]; *McClatchy* v. *Superior Court,* 119 Cal. 413 [51 Pac. 696, 39 L. R. A. 691].

In the instant case the cause of action accrued August 14, 1935, and will be barred at the expiration of one year. If the petitioner and his coplaintiffs are required to seek their relief from the order in question by means of appeal, it is evident that a judgment on appeal could not become final before their cause of action becomes barred by the statute of limitations. If the judgment which the trial court proposes to enter in favor of Chapman should be reversed on such appeal on the grounds which we have taken here, the dismissal of the action already filed would become effective and any rights the plaintiffs might have would be lost. It is evident from what we have just said that the remedy by appeal is

entirely inadequate and if successfully taken would result in a complete defeat of plaintiffs' cause of action.

It is ordered that a writ of review and prohibition issue annulling the order of the respondent court and judge made and filed on January 9, 1936, in the case of *Alice King et al.* v. *Franklin P. Chapman,* and peremptorily prohibiting respondents from signing and filing any findings of fact and conclusions of law and judgment in favor of Franklin P. Chapman in that case.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 13, 1936.